**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RITA MEADEN, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>HARBORONE BANK,<br><br>        Defendant. | Case No. _____ |

**CLASS ACTION COMPLAINT**

Plaintiff Rita Meaden, on behalf of herself and all others similarly situated, brings this class action complaint against Defendant HarborOne Bank, and alleges the following:

**INTRODUCTION**

1. Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant HarborOne Bank ("Defendant" or "HarborOne"), arising from its routine practice of assessing more than one insufficient funds fee ("NSF Fee") on the same transaction.

2. HarborOne customers have been injured by the bank's improper practices to the tune of millions of dollars bilked from their accounts in violation HarborOne's clear contractual commitments.

3. Plaintiff, on behalf of herself and a class of similarly situated consumers, seeks to end HarborOne's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good

faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

4. While there is nothing unlawful about assessing NSF Fees on accounts when such fees are assessed in compliance with contractual terms, NSF Fees in general have a crushing impact on persons living paycheck to paycheck. This is why the financial services industry is increasingly moving away from such fees.

5. For example, one of the nation's largest consumer banks, Ally Bank, recently stopped assessing overdraft fees altogether. Diane Morais, Ally Bank's president of consumer and commercial banking, said that one reason is because NSF Fees disproportionately affect people who are living paycheck to paycheck. *Overdraft Fees Are Getting the Boot at Ally Financial*, The Wall Street Journal (June 2, 2021), https://www.wsj.com/articles/overdraft-fees-are-getting-the-boot-at-ally-financial-11622631600.

## PARTIES

6. Plaintiff Rita Meaden is a citizen and resident of Brockton, Massachusetts.

7. Defendant HarborOne is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative class. HarborOne has $2.1 billion in assets, is headquartered in Brockton, Massachusetts, and maintains branch locations across Massachusetts and Rhode Island.

## JURISDICTION AND VENUE

8. This court has original jurisdiction over this class action under 18 U.S.C. §1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the district courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in

controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2)(A), (6). Plaintiff further alleges that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §1332(d)(2)(A).

9. Venue in this District is proper pursuant to 28 U.S.C. §1391 because HarborOne resides in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and HarborOne conducted business within this District during the relevant time period and is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. HARBORONE CHARGES MORE THAN ONE FEE ON THE SAME TRANSACTION

10. HarborOne's Account Documents allow HarborOne to charge a *single* $35 NSF Fee when a transaction is returned for insufficient funds or paid despite insufficient funds.

11. HarborOne breaches its Account Documents by charging more than one $35 NSF Fee on the same transaction, since the contract explicitly states—and reasonable consumers understand—that the same transaction can only incur a single NSF Fee.

12. A recent Washington Post article discussed predatory overdraft fees, labeling NSF fees like those HarborOne imposes as "indefensible" because "the customer gets hit with multiple charges for the same item." *I bought my kids dinner – and saw firsthand how overdraft fees punish the poor,* The Washington Post (October 1, 2021), https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html. The banks "are charging

a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id*.

13. In its latest issue of *Consumer Compliance Supervisory Highlights*, the FDIC addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees"—i.e., unclear definitions of "per item or "per transaction"—may be deceptive:

> During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance.

*Consumer Compliance Supervisory Highlights*, Federal Deposit Insurance Corporation, p. 8 (March 2022), https://www.fdic.gov/regulations/examinations/consumer-compliance-supervisory-highlights/ documents/ ccs-highlights-march2022.pdf (last accessed May 25, 2022).

14. In its staff analysis of the issue, the American Bankers Association (the "ABA") recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed each time the same item is resubmitted against insufficient funds.

4

The ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges associated with identifying items that have been resubmitted by the merchant for payment against insufficient funds. The ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights.

15. HarborOne's abusive practices are not standard within the financial services industry. Indeed, major banks like Wells Fargo—one of the largest consumer banks in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as HarborOne, their members agree to terms authorizing the fee practice.

16. HarborOne's Account Documents do not say that HarborOne may repeatedly charge customers multiple fees on a single transaction. To the contrary, the Account Documents indicate HarborOne will only charge a single NSF Fee on a transaction.

### A. Plaintiff's Experiences.

17. In support of her claim, Plaintiff alleges that HarborOne: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

18. For example, on March 11, 2020, Plaintiff was charged multiple $35 NSF Fees on transactions that were resubmitted by the merchant for payment without Plaintiff's request to reprocess the transactions.

19. Each merchant request for payment was for a single transaction and, as is laid out in HarborOne's Account Documents, should be subject to, at most, a single NSF Fee (if HarborOne returned it or paid it).

**B.     The Imposition of Multiple Fees on a Single Transaction Violates HarborOne's Express Promises and Representations.**

20.     HarborOne's Account Documents provide the general terms of Plaintiff's relationship with HarborOne and therein make explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees may be assessed.

21.     HarborOne's Account Documents state that the bank will assess a single fee of $35 for a transaction that is returned due to insufficient funds.

22.     According to HarborOne's Account Documents:

**Overdraft Charges: Insufficient Funds and Uncollected Funds Charges**
Insufficient Funds Charge - Paid [3,4] .................................................................................................. $35.00
Insufficient Funds Charge - Returned [3,4] ........................................................................................... $35.00
Uncollected Funds Charge - Paid [3,4] ................................................................................................ $35.00
Uncollected Funds Charge - Returned [3,4] ........................................................................................ $35.00

[1] Fee Waived for Advantage Gold checking
[2] Fee Waived for the first 8 ATM withdrawals on the CheckIT checking account.
[3] Special rules apply if account owner is 18 year old or younger or 65 years old or older, ask for details.
[4] For each debit transactions more than $5.00 and a maximum of 5 charges per day.

Exhibit A.

23.     The same check, ACH, or other electronic payment on an account is not a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the transaction.

24.     Even if HarborOne reprocesses an instruction for payment, it is still the same item. The bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

25.     As alleged herein, Plaintiff took only a single action to make a single payment; she therefore created only one transaction and may be charged only a single fee.

6

26.     As the disclosures described above show, Plaintiff never agreed that HarborOne may assess multiple NSF Fees for a transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

27.     In sum, HarborOne promises that one $35 NSF Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, HarborOne breached the contract when it charged more than one fee per transaction.

28.     A reasonable consumer would understand that HarborOne's Account Documents permit it to assess an NSF Fee only once per item.

29.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which the bank will either pay (resulting in an overdraft item) or return (resulting in a returned transaction) when it decides there are insufficient funds in the account. Nowhere do HarborOne and its customers agree that HarborOne will treat each reprocessing of a check or ACH payment as a separate transaction, subject to additional fees.

30.     Customers reasonably understand, based on the language of the Account Documents, that the bank's attempts to reprocess checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same transaction.

31.     Banks like HarborOne that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that engage in this abusive practice require their accountholders to expressly authorize it—something HarborOne never did.

32. For example, First Hawaiian Bank engages in the same abusive practices as HarborOne, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

33. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI (emphasis added).

34. Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Jan. 4. 2021), https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

35. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,* BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed June 4, 2021).

36. Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

37. Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb (last accessed June 4, 2021).

38. Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

9

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta (last accessed June 4, 2021).

    39.    Wright Patt Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed June 4, 2021).

    40.    Railroad & Industrial Federal Credit Union states:

> Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

    41.    Partners 1st Federal Credit Union states:

> Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

    42.    Members First Credit Union states:

> We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

43. Community Bank, N.A. states:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

44. RBC Bank states:

> We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

45. Diamond Lakes Credit Union states,

> Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

46. Parkside Credit Union states,

> If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

47. HarborOne provides no such disclosure, and by not doing so, deceives its accountholders.

**C.     The Imposition of Multiple Fees on a Single Transaction Breaches HarborOne's Duty of Good Faith and Fair Dealing.**

48. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. Further, as to bank transactions, the Uniform Commercial Code ("UCC")—which has been adopted by all states—mandates good faith and fair dealing. As such, when a party such as HarborOne gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.

49. Here—in the adhesion agreements HarborOne foisted on Plaintiff and its other customers—HarborOne has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the bank abuses that discretion to take money out of

consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

50. HarborOne exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines item in a way that directly leads to more NSF Fees. Further, HarborOne abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the bank's implied covenant to engage in fair dealing and act in good faith.

51. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single transaction, HarborOne breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

52. It was bad faith and totally outside Plaintiff's reasonable expectations for HarborOne to use its discretion to assess multiple NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class is defined as:

> All persons or entities who, during the applicable statute of limitations, were HarborOne checking account holders and were charged multiple fees on the same item (the "Class").

54. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, their immediate family members, and

chambers staff.

55. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

56. Plaintiff readily satisfies the requirements set forth in Federal Rule of Civil Procedure Rule 23(a) and (b).

57. <u>Numerosity</u>: The parties are numerous such that joinder is impracticable. Given the nature of the banking industry, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to HarborOne's records. HarborOne has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

58. <u>Commonality</u>: The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. Such common legal or factual questions include, but are not limited to:

a) Whether HarborOne charged multiple fees on a single transaction;

b) Whether the conduct enumerated above violates the contract;

c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

d) The appropriate measure of damages.

59. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by HarborOne, as described herein.

60. <u>Adequacy</u>: Plaintiff is a more than adequate representative of the Class in that

Plaintiff is a HarborOne checking accountholder and has suffered damages as a result of HarborOne's contract violations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action;

d) Plaintiff has retained legal counsel with extensive experience litigating class actions, including actions against the banking industry; and

e) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

61. <u>Predominance</u>: The common questions predominate over questions that may affect only individual class members because HarborOne has acted on grounds generally applicable to the class. In other words, HarborOne improperly and regularly charges its customers multiple NSF Fees on the same item.

62. <u>Superiority</u>: It is impracticable to bring members of the Class's individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

63. Plaintiff knows of no difficulty to be encountered in the maintenance of this action

that would preclude its maintenance as a class action.

64. HarborOne has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

65. All conditions precedent to bringing this action have been satisfied and/or waived.

## BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Individually and on Behalf of the Class)

66. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

67. Plaintiff, and all members of the proposed Class, contracted with HarborOne for checking account services, including debit card services.

68. HarborOne breached promises made to Plaintiff and all members of the proposed class when, as described herein, HarborOne charged multiple fees on a single transaction.

69. In addition, in Massachusetts and Rhode Island, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

70. Subterfuge and evasion violate the obligation of good faith in performance in both Massachusetts and Rhode Island even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect

performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

71. Massachusetts' and Rhode Island's implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

72. HarborOne has breached the covenant of good faith and fair dealing in both Massachusetts and Rhode Island and abused its discretion in its contract as described herein. Specifically, HarborOne should not have used its discretion to charge multiple fees on a single transaction. The Account Documents do not have a contract term permitting multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for HarborOne to charge multiple fees on the same transaction.

73. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

74. Plaintiff and all members of the proposed Class have sustained damages as a result of HarborOne's breaches of the contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Class;

B. Declaring HarborOne's NSF Fee policies and practices to be in breach of its contract with accountholders;

C. Restitution of all NSF Fees improperly paid to HarborOne by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F. For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

G. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: February 28, 2023                              Respectfully submitted,


*/s/ Patrick J. Sheehan*
Patrick J. Sheehan (BBO# 639320)
**WHATLEY KALLAS, LLP**
101 Federal Street, 19th Floor
Boston, MA 02110
Tel: (617) 203-8459
Fax: (800) 922-4851
psheehan@whatleykallas.com

Jeffrey D. Kaliel (admitted *pro hac vice*)
Sophia G. Gold (admitted *pro hac vice*)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

*Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

    I, Patrick J. Sheehan, hereby certify that on this 28th day of February, 2023, I caused a copy of the foregoing to be served via electronic mail, upon agreement of the parties, upon the following counsel of record:

> Matthew G. Lindenbaum (BBO#670007)
> Nelson Mullins Riley & Scarborough LLP
> One Financial Center, Suite 3500
> Boston, MA 02111
> (617) 217-4700
> (617) 217-4710 (fax)
> Matthew.lindenbaum@nelsonmullins.com

    */s/ Patrick J. Sheehan*
    Patrick J. Sheehan